**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

DONALD J. MONTGOMERY,          :

                Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.     :

Case No. 3:11-cv-256

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a.

With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national

economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff protectively filed applications for SSD and SSI in June, 2007, alleging disability from April 2007 due to a herniated disc affecting his left leg. See, *e.g.,* PageID 159-60; 191. The Commissioner denied Plaintiff's application initially and on reconsideration. See PageID 76-81. Administrative Law Judge Janice Bruning held a hearing, PageID 55-74, and subsequently determined that Plaintiff is not disabled. PageID 43-54. The Appeals Council denied Plaintiff's request for review, PageID 34-36, and Judge Bruning's decision became the Commissioner's final decision. See *Kyle v. Commissioner of Social Security,* 609 F.3d 847, 854 (6th Cir. 2010).

In determining that Plaintiff is not disabled, Judge Bruning found that Plaintiff met the insured status requirements of the Act through December 31, 2011. PageID 45, ¶ 1. Judge Bruning also found that Plaintiff has severe degenerative disc disease of the cervical and lumbar spines, obesity, and a contusion of the left shoulder, but that he does not have an impairment or combination of impairments that meets or equals the Listings. *Id.*, ¶¶ 3, 4. Judge Bruning found further that Plaintiff has the residual functional capacity to perform a limited range of sedentary work. PageID 46, ¶ 5. Judge Bruning then used section 201.21 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. PageID 49, ¶ 10. Judge Bruning concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. PageID 50.

The record contains a copy of Plaintiff's treatment notes from Miami Valley Hospital dated May 9 to July 12, 2007, and which reflect that Plaintiff underwent a series of bilateral L3-4, L4-5, and L5-S1 facet injections for treatment of lumbar spinal stenosis and which Dr. Smith

performed.  PageID 264-85; 384-88.

The record contains a copy of treating physician Dr. Hubach's office notes dated November 11, 1997, to July 24, 2007.  PageID 287-337.  Those records reveal that Dr. Hubach treated Plaintiff for various medical conditions and complaints including back pain, a knee impairment, hyperlipidemia, myalgia, and arthralgias.  *Id.*  An April 2007 CT of Plaintiff's lumbar spine revealed multilevel degenerative disc disease and disc protrusion, most prominent at L4-L5 with a prominent left lateral recess component impinging the left L5 nerve root.  *Id.*  In June 2007 Dr. Hubach referred Plaintiff to Dr. Tigyer, an orthopedic surgeon, who determined that Plaintiff had L4-5 and L5-S1 HNP and recommended Plaintiff pursue a formal course of physical therapy.  *Id.*  In addition, Dr. Tigyer noted that Plaintiff wanted to schedule a microdiscectomy procedure.  *Id.*

Plaintiff consulted with orthopedist Dr. Urse in November, 2007, at which time Dr. Urse reported that on January 22, 2007, Plaintiff had sustained a work-related injury to his left shoulder and that examination revealed several abnormalities of the shoulder.  PageID 367-69.  Dr. Urse also reported that Plaintiff had a left shoulder contusion with an AC joint sprain and rotator cuff tendinopathy with subacromial impingement and he recommended an arthroscopic assisted left rotator cuff debridement.  *Id.*

A September 30, 2008, nerve conduction study was consistent with a C6-7 radiculopathy on the left, a bilateral carpal tunnel syndrome, and an ulnar nerve compression across the elbow on the left side, and no evidence of a lumbosacral radiculopathy or a polyneuropathy.  PageID 391; 395.

The record contains a copy of treating physician Dr. Kay's office notes dated January

5

5 through November 13, 2009, which reveal that Dr. Kay provided Plaintiff with pain management for his neck and back pain. PageID 408-59. Over time, Dr. Kay and his physician's assistant noted that Plaintiff was doing well with pain management, that he did not report any adverse effects from his medications. *Id.* Dr. Kay and his physician's assistant also reported over time that Plaintiff had persistent back and left leg pain. *Id.* In September, 2009, Dr. Kay noted that Plaintiff's clinical signs were negative, but that he had had three failed lumbar epidural injections and that his MRI revealed a moderate-to-large disk herniation on the left at L5-S1 and he recommended Plaintiff consult with a neurosurgeon. *Id.*

The record contains a copy of Plaintiff's treatment notes from Striebel Family Practice, Inc., dated June 16, 2008, to December 4, 2009. PageID 462-532. Those notes reveal that Dr. Striebel treated Plaintiff for various medical conditions and complaints including chest pain, back pain, abnormal weight gain, hypertension, hyperlipidemia, metabolic syndrome, obesity, thoracic or lumbosacral neuritis or radiculitis, urinary obstruction, diabetes mellitus, COPD, stage I kidney disease, and obstructive sleep apnea. *Id.* In May, 2008, Dr. Striebel noted that Plaintiff was 68 inches tall, weighed 258 pounds, and had a body mass index (BMI) of 39.2. *Id.*

Dr. Kay reported on December 14, 2009, that Plaintiff was able to stand and walk each for one hour total and for thirty to forty-five minutes at one time, sit for two hours and for one hour at one time, lift up to ten pounds rarely, that he was not able to perform pulling and pushing activities, and that his condition was likely to deteriorate under stress, particularly stress associated with a job. PageID 535-36.

The record contains Plaintiff's treatment notes dated June 17, 2008, through June 15, 2009, from Dayton Respiratory Center where Plaintiff received treatment from Dr. Patel for obesity,

6

snoring, and sleep apnea-hypopnea syndrome. PageID 538-61.

Plaintiff alleges in his Statement of Specific Errors that the Commissioner erred by failing to give controlling weight to Dr. Kay's opinion, failing to find that he is disabled by a combination of his impairments, and by failing to consider the effects of his obesity. (Doc. 8).

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406, *quoting, Wilson,* 378 F.3d at 544. "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 582 F.3d at 406*, citing, Wilson,* 378 F.3d at 544*, citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07*,citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Blakley,* 581 F.3d at 407*, citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement

exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.*, 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

> The *Wilson* court instructs that where the ALJ fails to give good reasons on the record for according less than controlling weight to treating sources, we reverse and remand unless the error is a harmless *de minimis* procedural violation. *See Wilson.* 378 F.3d at 547. Such harmless error may include the instance where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," or where the Commissioner "has met the goal of ... the procedural safeguard of reasons." *Id.* However, the ALJ's failure to follow the Agency's procedural rule does not qualify as harmless error where we cannot engage in "meaningful review" of the ALJ's decision. *Id.* at 544.

*Blakley,* 581 F.3d at 409

The record reveals that Dr. Kay has been Plaintiff's long-term treating pain specialist. As noted above, Dr. Kay essentially opined that Plaintiff's residual functional capacity is inconsistent with an ability to perform work-related activities. Indeed, Dr. Kay is the only physician, other than the non-treating, non-examining physicians who offered an opinion as to Plaintiff's abilities to perform work-related activities. Nevertheless, although Dr. Kay has been Plaintiff's long-term treating physician who has opined that Plaintiff is disabled, the Commissioner failed to properly analyze Dr. Kay's opinion as required by the Regulations or by the law in the Sixth Circuit. See PageID 47-48. More particularly, the Commissioner failed to satisfy the "reason-giving requirement". The Commissioner did little more than recite the findings that Dr. Kay

reported. *Id.* In the absence of a proper analysis of treating physician Dr. Kay's opinion, this Court is not able to engage in meaningful judicial review of the Commissioner's decision.

Accordingly, the Commissioner's decision that Plaintiff is not disabled should be reversed and the case remanded to the Commissioner for further administrative proceedings. Finally, the Court notes that this is a fourth sentence remand. *Sullivan v. Finkelstein,* 496 U.S. 617 (1990).

April 4, 2012.

s/ **Michael R. Merz**
United States Magistrate Judge

J:\Social Security\Montgomery_SSD&SSI.wpd

## NOTICE  REGARDING  OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).